| | |
|---|---|
| JOCELYN BURTON, SBN 135879<br>JOHN P. BRISCOE, SBN 273690<br>BURTON EMPLOYMENT LAW<br>1939 Harrison Street, Suite 400<br>Oakland, CA 94612<br>Ph: (510) 350-7025<br>Fax: (510) 473-3672<br>jburton@burtonemploymentlaw.com<br>jbriscoe@burtonemploymentlaw.com<br><br>Attorneys for Plaintiff<br>Angel L. Keene | |

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL L. KEENE,<br><br>    Plaintiff,<br><br>v.<br><br>CALLSOCKET, L.P., a limited partnership; CALLSOCKET II, L.P., a limited partnership; CALLSOCKET III, L.P., a limited partnership; CALLSOCKET, LLC, a limited liability company; CALLSOCKET II, LLC, a limited liability company; CALLSOCKET III, LLC, a limited liability company; CALLSOCKET HOLDING COMPANY, LLC, a limited liability company; CALLSOCKET II HOLDING COMPANY, LLC, a limited liability company; CALLSOCKET III HOLDING COMPANY, a limited liability company; SUSAN L. UECKER, an individual and in her official capacity as receiver; THOMAS HENDERSON, an individual;<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR**<br><br>1. **FAILURE TO ENGAGE IN INTERACTIVE PROCESS (FEHA)**<br>2. **FAILURE TO ACCOMMODATE (FEHA)**<br>3. **DISABILITY DISCRIMINATION (FEHA)**<br>4. **RETALIATION FOR REQUESTING ACCOMMODATION (FEHA)**<br>5. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION (FEHA)**<br>6. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**<br>7. **DISABILITY DISCRIMINATION (ADA)**<br><br>**JURY TRIAL DEMANDED** |

///

///

Complaint for Damages
Page 1 of 15

Plaintiff Angel L. Keene (hereinafter "Plaintiff") alleges as follows:

## PRELIMINARY STATEMENT

Plaintiff brings this action for monetary damages, injunctive relief, et al. pursuant to the Americans with Disabilities Act as amended effective January 1, 2009, 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA") and the California Fair Employment and Housing Act, California Government Code § 12940 *et seq.* (hereinafter "FEHA"). Plaintiff seeks redress for injuries she sustained from Defendants' unlawful acts as alleged herein.

## JURISDICTION

1. This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e-5 to enforce the provisions of the ADA, 42 U.S.C. § 12101 *et seq.* and conferring original jurisdiction upon this court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, under the Declaratory Judgment Statute, 28 U.S.C. § 2201, and under 42 U.S.C. §1981

2. This Court has supplemental jurisdiction over the related state claims pursuant to 28 U.S.C. § 1367. Plaintiff's claims pursuant to the FEHA, Cal. Gov. Code § 12940(a), (h), (k), (m), and (n) along with her claim of wrongful discharge in violation of public policy are related, as all of Plaintiff's claims share common operative facts. Resolving all state and federal claims in a single action serves the interests of judicial economy, convenience and fairness to the parties.

3. The Court has the authority to grant declaratory relief pursuant to 42 U.S.C. § 2000e-5(f) & (g).

## INTRADISTRICT ASSIGNMENT AND VENUE

4. Venue is proper in the United States District Court of the Northern District of California as the unlawful employment practices occurred in Oakland, California and/or Alameda County. 28 U.S.C. § 1391(b)(2), 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

5. Plaintiff is a resident of California who was jointly employed as a call center representative by Defendants CallSocket, L.P., CallSocket II, L.P., CallSocket III, L.P., CallSocket, LLC, CallSocket II, LLC, CallSocket III, LLC, CallSocket Holding Company, LLC, CallSocket

Holding Company II, LLC, and CallSocket Holding Company III, LLC (hereinafter collectively referred to as the "CallSocket entities"). Plaintiff was a disabled female under the ADA and FEHA because her doctor diagnosed her with a major depressive order and because that condition substantially limited her ability to sleep, work, and perform other major life activities, even with mitigating measures. At all relevant times, Plaintiff resided in Alameda County.

6. At all times relevant to this Complaint, the CallSocket entities are limited liability companies and limited partnerships, as indicated, operating and existing under the laws of the State of California. The CallSocket entities' principal place(s) of business is/are located in Oakland, California.

7. The CallSocket entities are in the business of providing inbound call center services including, but not limited to telephone answering services, customer service and support, order processing, dispatch services, direct response marketing support, emergency call center services, help desk services, hotlines, appointment setting and management, cell phone answering services, loyalty programs, DRTV response marketing, and live chat. The CallSocket entities also provide outbound call center services including, but not limited to outbound sales, lead generation, surveys, fundraising, customer retention, and promotions. The CallSocket entities also assist customers with campaign needs including, but not limited to shared campaigns, blended campaigns, and dedicated campaigns on an agent, team, or group level.

8. Defendant Thomas Henderson (hereinafter "Henderson") is a resident of California and a partner/owner/officer/director of the CallSocket entities.

9. Defendant Susan L. Uecker (hereinafter "Uecker") is an individual and a resident of California. By order of the Superior Court of California, in and for the County of Alameda, in the case of *Young v. Henderson, et al.,* Case No. RG15778891, Uecker was duly appointed receiver of the CallSocket entities, and was ordered to "oversee the business and operations" thereof and to "take possession, custody and control of [the CallSocket entities] [. . .] and all tangible and intangible property related thereto, wherever located together with all revenues, profits and proceeds thereof[.]" Uecker, in her official capacity as receiver for the CallSocket entities, is a properly named Defendant in this lawsuit because, among other things, she maintains possession,

custody, and control of the assets of the CallSocket entities from which Plaintiff seeks damages, attorney's fees, costs, et al. Plaintiff will seek leave from the receivership court for litigation to proceed against Uecker and the receivership estate, to the extent that the assets of the CallSocket entities remain in receivership.

10. The CallSocket entities, Henderson, and Uecker are collectively referred to as Defendants.

11. At all times relevant to this Complaint, Defendant The CallSocket entities is an employer covered by the ADA and the FEHA in that it is engaged in an industry affecting interstate commerce and employ at least 15 full or part-time employees for each working day of each of 20 or more calendar weeks in the current or preceding year.

## **GENERAL ALLEGATIONS**

12. From approximately December 2014 to November 24, 2015, Plaintiff was employed by the CallSocket entities. Throughout her employment, she worked at the CallSocket entities' office located in Oakland, California.

13. From approximately December 2014 to August 2015, Plaintiff was employed as a call center representative at a pay rate of $14 per hour plus $5 per appointment she scheduled with customers seeking to purchase premier bathtubs. From approximately August 2015 to early October 2015, Plaintiff worked as a quality assurance employee. From there, she returned to her prior call center representative position until she was terminated on or around November 24, 2015.

14. On or around October 13, 2015, Dr. John Huh provided Plaintiff with a Work Status Report that excused Plaintiff from work from October 13, 2015 to October 27, 2015 due to Plaintiff's major depressive disorder.

15. On or around October 14, 2015, Plaintiff complied with the CallSocket entities' Employee Handbook (hereinafter "Handbook") by timely providing her supervisor Randy Mannon with the Work Status Report from Dr. Huh and by notifying Human Resources (hereinafter "HR") of her request for a medical leave of absence as an accommodation for her disability.

16. From approximately October 14, 2015 to November 24, 2015, Plaintiff was on a medical leave of absence.

17. From approximately October 14, 2015 to approximately October 26, 2015, Plaintiff left multiple voice messages to the CallSocket entities' Vice President of Human Resources Sabrina Baptiste-Shepard (hereinafter "Baptiste-Shepard") about discussing accommodations for her disability.

18. From approximately October 14, 2015 to November 24, 2015, Baptiste-Shepard and other members of HR never gave Plaintiff paperwork officially approving leave as an accommodation.

19. On or around October 26, 2015, Dr. Huh provided Plaintiff with another Work Status Report extending her leave from October 27, 2015 to November 8, 2015.

20. On or around October 27, 2015, Plaintiff went to Baptiste-Shepard's office due to Baptiste-Shepard's failure to respond to her phone calls. Baptiste-Shepard told Plaintiff that it was pointless to look at the Work Status Report and refused to accept it. Baptiste-Shepard also told Plaintiff that she did not qualify for a leave of absence because she had not worked the requisite amount of time.

21. On or around November 6, 2015, an employee from HR contacted Plaintiff while she had a doctor's appointment with Dr. Huh. She told the employee that she would return the call after her appointment. During the medical appointment, Dr. Huh extended Plaintiff's leave from November 6, 2015 to November 22, 2015 by providing her with another Work Status Report. Plaintiff timely notified HR of Dr. Huh extending her leave.

22. On or around November 10, 2015, Plaintiff and Baptiste-Shepard spoke via telephone. During this conversation, Plaintiff requested that the CallSocket entities accommodate her disability by allowing her to work a modified schedule while she continued her treatment three times per week. In response, Baptiste-Shepard gave Plaintiff an ultimatum: resign or be terminated. Baptiste-Shepard strongly urged Plaintiff to resign by suggesting that she would be eligible for rehire once she was no longer disabled.

23. On November 11, 2015, Plaintiff wrote the following email to Baptiste-Shepard to again request accommodation for her disclosed disability:

> In reference to our conversation we had over the phone yesterday 11/10/2015 which you asked me to resign or else I will be terminated can you please send that in writing. I do not want to resign being that I would be cleared for work on 11/22/2015. Are there any other options that you may have not mentioned if so can you please let me know if you can consider accommodation. Thank you

On that same day, Baptiste-Shepard responded via email by stating, "Ok Angel."

24. On or around November 12, 2015, Plaintiff emailed Baptiste-Shepard her most recent Work Status Report and reminded Baptiste-Shepard that she does not understand why Baptiste-Shepard does not need the report.

25. On November 16, 2015, Plaintiff asked Baptiste-Shepard via email to clarify Baptiste-Shepard's November 11th email. Plaintiff wrote the following:

> Good morning Sabrina,
> I'm just following up to see were their [*sic*] any options available that would accommodate me coming back to work. When you replied OK in your email it was not clear exactly what you were saying ok too [*sic*].

26. On November 18, 2015, Baptiste-Shepard informed Plaintiff via email that she was reviewing Plaintiff's request for additional unpaid time off. She also wrote that the CallSocket entities had provided Plaintiff with significant time off as an accommodation and that she was not eligible for medical leave, but that she would notify Plaintiff by November 22nd if Plaintiff's extension for leave was granted.

27. In November 2015, Dr. Huh extended Plaintiff's leave from November 22, 2015 to December 6, 2015 by providing her with another Work Status Report.

28. On November 23, 2015, Baptiste-Shepard instructed Plaintiff via email to return to work, but only if she was "cleared" by her doctor (i.e., completely non-disabled). The following day, Plaintiff notified Baptiste-Shepard via email that she had an upcoming doctor's appointment

and that she was still under her doctor's care, but that she could provide Baptiste-Shepard with doctor's notes.

29. On or around November 24, 2015, Baptiste-Shepard terminated Plaintiff via email, writing:

> "Hello Angel,
>
> Thank you for your e-mail. Unfortunately, we are unable to extend another request for unpaid time. We will be processing your final paperwork. Best of luck to you."

30. At the time of Plaintiff's termination, the CallSocket entities employed approximately 100 call center representatives who performed substantially the same duties as Plaintiff.

31. Upon her termination, Plaintiff's emotional distress increased.

32. In approximately January 2016, Plaintiff's doctor cleared her to work without restrictions.

33. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, there existed between Henderson and the CallSocket entities a unity of interest and ownership, such that any individuality or separateness never existed or has ceased, and that the Henderson was the alter ego of the CallSocket entities, and each of them, in that:

    a. The CallSocket entities were conceived, intended and used by Henderson, as a device for the purpose of substituting a financially insolvent limited partnership in the place of Henderson to avoid individual liability for any and all acts, omissions, occurrences, and transactions alleged herein;

    b. Henderson held himself out to Plaintiff and to other creditors that he was personally responsible for the debts of the CallSocket entities;

    c. Henderson used the assets of the CallSocket entities for his own personal use, and caused said assets of the CallSocket entities to be transferred to him, or to entities he controlled, or to his family members, without adequate consideration and to avoid creditors, including Plaintiff;

       d.       Henderson dominated and controlled the finances of the CallSocket entities, and treated and used the CallSocket entities's accounts for his own personal use, and commingled the CallSocket entities and personal funds to avoid creditors of the CallSocket entities, including Plaintiff;

       e.       Henderson completely disregarded the formalities and separateness of the CallSocket entities, in that no meetings were held for partners, no minutes were recorded or maintained, and no transactions were ever approved by partners;

       f.       Henderson used the CallSocket entities and related entities as a mere shell, instrumentality or conduit for a single venture or business of Henderson and/or Henderson's related limited liability corporations and limited partnerships including, but not limited to the CallSocket entities.

34. Plaintiff is informed and believes, and alleges thereon, that adherence to the fiction of the separate existence of the CallSocket entities as an entity distinct from Henderson, would permit an abuse of the limited partnership privilege and would allow fraud and promote injustice in that, among other things, Henderson set up the business of the CallSocket entities for the purpose of avoiding his debts and obligations owed to Plaintiff and similarly situated persons.

35. As an alter ego of the CallSocket entities, Henderson is personally liable for all of the debts of the CallSocket entities, including those for the claims stated in this pleading.

36. On August 24, 2016, Plaintiff filed all appropriate charges with the Department of Fair Employment and Housing ("DFEH"), and was issued a right-to-sue notice that same day.

37. On September 1, 2016, Plaintiff amended her charge with the DFEH and was issued a further right-to-sue notice that same day.

38. On October 4, 2016, Plaintiff *further* amended her charge with the DFEH and was issued a third right-to-sue notice that same day.

39. On August 24, 2016, Plaintiff submitted a complaint of discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission (hereinafter "EEOC").

40. Plaintiff received a right-to-sue notice from the EEOC, dated September 14, 2016.

### FIRST CAUSE OF ACTION
### VIOLATION OF CAL. GOV. CODE § 12940(n)
### (Failure to Engage in Interactive Process – FEHA)
### Against Defendants

41. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 40 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

42. The FEHA requires an employer "to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical disability or known medical condition." Cal. Gov. Code § 12940(n).

43. Nevertheless, as set forth above, Defendants failed to participate in timely, good faith, interactive discussions with Plaintiff.

44. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Plaintiff, thereby justifying an award of punitive damages.

45. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and requests relief as hereafter provided.

### SECOND CAUSE OF ACTION
### VIOLATION OF CAL. GOV. CODE § 12940(m)
### (Failure to Accommodate – FEHA)
### Against Defendants

46. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 45 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

47. The FEHA requires an employer to reasonably accommodate the known disabilities of its employees. Cal. Gov. Code § 12940(m).

48. Nevertheless, as set forth above, Defendants refused to provide Plaintiff with a reasonable accommodation for his known disability.

Complaint for Damages
Page 9 of 15

49. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Plaintiff, thereby justifying an award of punitive damages.

50. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and requests relief as hereafter provided.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CAL GOV. CODE § 12940(a)**
**(Disability Discrimination – FEHA)**
**Against Defendants**

51. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 50 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

52. The Fair Employment and Housing Act ("FEHA") explicitly prohibits an employer from refusing to hire or employ a person, discharging a person from employment, or discriminating against such person in compensation or in terms, conditions or privileges of employment on the basis of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation or military and veteran status. Gov. Code § 12940(a). "Race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, sexual orientation, or military and veteran status" includes a perception that the person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics. Gov. Code § 12926(n).

53. At all times relevant herein mentioned, Plaintiff was qualified for the position she held with Defendants.

54. Defendants were at all times material herein Plaintiff's employer pursuant to Government Code section 12926(d) and was therefore barred from discriminating in their employment decisions in violation of Government Code section 12940(a).

55. Nevertheless, as set forth above, Defendants discriminated against Plaintiff based on her disability, perceived disability, and/or future perceived disability, in violation of Government Code section 12940(a).

56. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Plaintiff, thereby justifying an award of punitive damages.

57. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and requests relief as hereafter provided.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF CAL. GOV. CODE § 12940(m)(2)**
**(Retaliation for Requesting Accommodation)**
**Against Defendants**

58. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 57 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

59. The FEHA provides that it is unlawful "[f]or an employer or other entity covered by this part to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted."

60. Defendants were at all times material herein Plaintiff's employer pursuant to Government Code section 12926(d) and was therefore barred from retaliating or otherwise discriminating against their employees for requesting accommodations in violation of Government Code section 12940(m)(2).

61. Nevertheless, as set forth above, Defendants retaliated and discriminated against Plaintiff because she requested accommodation for her disability, in violation of Government Code section 12940(m)(2).

62. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and

malicious manner in order to injure or damage Plaintiff, thereby justifying an award of punitive damages.

63. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and requests relief as hereafter provided.

## FIFTH CAUSE OF ACTION
### VIOLATION OF CAL. GOV. CODE § 12940(k)
**(Failure to Prevent Discrimination and Retaliation)**
**Against Defendants**

64. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 63 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

65. The FEHA requires an employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." Gov. Code § 12940(k).

66. Defendants, at all times material hereto, were Plaintiff's employer pursuant to Government Code section 12926(d) and were therefore required to prevent discrimination and retaliation as set forth in Government Code section 12940(k).

67. Defendants knew or should have known of the discrimination and retaliation by its employees, supervisors, managers, and Does 1-100, inclusive.

68. Nevertheless, as set forth above, Defendants did nothing to rectify or prevent said discrimination and retaliation. Instead, Defendants consented to, encouraged, permitted and/or acquiesced to the discrimination and retaliation.

69. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Plaintiff, thereby justifying an award of punitive damages.

70. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and requests relief as hereafter provided.

///

///

///

# SIXTH CAUSE OF ACTION
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### Against Defendants

71. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 70 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

72. Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of California, pursuant to the case of *Tameny v. Atlantic Richfield Company* (1980) 27 Cal.3d 167 and *Rojo v. Kliger* (1990) 52 Cal.3d 65.

73. Under California law, there is a fundamental and well-established public policy prohibiting discrimination against employees who are disabled, who have a history of disability, or who are perceived to be disabled in the present or the future. Furthermore, under California law, there is a fundamental and well-established policy prohibiting retaliation against employees who engage in protected activity. Said public policies are embodied in the Constitution of the State of California and in California statutes, particularly Government Code sections 12900 *et seq*.

74. Nevertheless, as set forth above, Plaintiff was discriminated against because she was disabled, had a history of being disabled, and was perceived by Defendants as being disabled in the present and future. Further, and as set forth above, Plaintiff was retaliated against because she requested accommodation for her disability.

75. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Plaintiff, thereby justifying an award of punitive damages.

76. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and requests relief as hereafter provided.

*///*

*///*

*///*

## SEVENTH CAUSE OF ACTION
## VIOLATION OF 42 U.S.C. §§ 12101 ET SEQ.
### (Disability Discrimination – ADA)
### Against Defendants

77. Plaintiff hereby realleges and incorporates by reference Paragraphs 1 through 76 above as though fully set forth herein, except as said paragraphs are inconsistent with the allegations of this cause of action.

78. The Americans with Disabilities Act ("ADA") provides that covered entities may not discriminate against qualified individuals on the basis of disability in regard to the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment.

79. Plaintiff suffers from disabilities in that she possesses a physical and/or mental impairment that substantially limit one or more of her major life activities, she has a record for such impairment, or she was regarded as having such impairment.

80. Plaintiff is a qualified individual with disabilities who, with or without reasonable accommodation, could perform the essential functions of the position she held.

81. Nevertheless, as set forth above, Defendant The CallSocket entities discriminated against Plaintiff on the basis of her disability.

82. The acts taken toward Plaintiff were carried out by and/or ratified by Defendants and/or managing agents/employees of Defendants acting in an oppressive, fraudulent and malicious manner in order to injure or damage Plaintiff, thereby justifying an award of punitive damages.

83. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages and requests relief as hereafter provided.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1. For a declaratory judgment that Defendants violated the laws of the United States and the State of California;

Complaint for Damages
Page 14 of 15

2. For a monetary judgment representing compensatory damages including lost wages, earnings, employee benefits, and all other sums of money, together with interest on these amounts, according to proof;

3. For injunctive relief pursuant to California Government Code § 12965(c)(3);

4. For an award of punitive damages;

5. For a monetary judgment for emotional pain and suffering, according to proof;

6. For the costs of suit and attorney's fees including attorney's fees pursuant to 42 U.S.C. § 2000e-5 and California Government Code § 12965;

7. For prejudgment and post judgment interest; and

8. For any further relief that is just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all claims and causes of action so triable.

///

Dated: December 1, 2016

                                                    Respectfully submitted,

                                                    Burton Employment Law

                                                  By: /s/ John P. Briscoe
                                                         Jocelyn Burton
                                                        John P. Briscoe
                                                        Attorneys for Plaintiff
                                                        ANGEL L. KEENE